the fourth quarter, and a non-recurring permanent tax benefit of $0.02 per diluted share. Excluding the impact of these two items, the Company's Adjusted EPS and GAAP-basis EPS were $0.20 and $0.16 per diluted share, respectively.

- Revenue generated for the full year 2004 was $169 million, an increase of 135% over $72 million for the full year 2003.

- EBITDA generated for the full year 2004, excluding the above noted non-cash goodwill impairment charge, was $37.l million, which represents an increase of 85% over full year 2003 EBITDA of $20.1 million.

- Adjusted EPS was $0.72 per diluted share and GAAP-basis EPS was $0.60 per diluted share for the full year 2004. Both Adjusted EPS and GAAP-basis EPS for the full year include a reduction of $0.04 per diluted share related to the previously noted non-cash goodwill impairment charge recognized in the fourth quarter, and a non-recurring permanent tax benefit of $0.02 per diluted share. Before the impact of the foregoing items, the Company's Adjusted EPS and GAAP-basis EPS for the full year 2004 were $0.74 and $0.62 per diluted share, respectively.

- Cash, cash equivalents and short-term investments at December 31, 2004 were in excess of $54 million.

44.     Defendant Pisaris-Henderson was quoted in the release stating:

Throughout 2004 we delivered on the first phase of our corporate growth strategy by acquiring best-of-class businesses and expanding our global footprint, further strengthening our value proposition to advertisers and publishers globally. Leveraging our unique assets, the Company is well positioned to take advantage of the positive trends in performance-based marketing and commerce.

We are now into the second phase of our corporate growth strategy and remain focused on our long-term view towards growth and profitability. In the near-term, as our guidance implies, we are committed to increasing internal investments so that we continue to deliver quality leads that maximize conversion rates for our advertisers. To that end, we are moving forward, integrating the assets we have accumulated, creating a single transparent platform that combines relevant advertising with the visibility to measure conversions, rather than just clicks alone.

the fourth quarter, and a non-recurring permanent tax benefit of $0.02 per diluted share. Excluding the impact of these two items, the Company's Adjusted EPS and GAAP-basis EPS were $0.20 and $0.16 per diluted share, respectively.

- Revenue generated for the full year 2004 was $169 million, an increase of 135% over $72 million for the full year 2003.

- EBITDA generated for the full year 2004, excluding the above noted non-cash goodwill impairment charge, was $37.I million, which represents an increase of 85% over full year 2003 EBITDA of $20.1 million.

- Adjusted EPS was $0.72 per diluted share and GAAP-basis EPS was $0.60 per diluted share for the full year 2004. Both Adjusted EPS and GAAP-basis EPS for the full year include a reduction of $0.04 per diluted share related to the previously noted non-cash goodwill impairment charge recognized in the fourth quarter, and a non-recurring permanent tax benefit of $0.02 per diluted share. Before the impact of the foregoing items, the Company's Adjusted EPS and GAAP-basis EPS for the full year 2004 were $0.74 and $0.62 per diluted share, respectively.

- Cash, cash equivalents and short-term investments at December 31, 2004 were in excess of $54 million.

44.     Defendant Pisaris-Henderson was quoted in the release stating:

Throughout 2004 we delivered on the first phase of our corporate growth strategy by acquiring best-of-class businesses and expanding our global footprint, further strengthening our value proposition to advertisers and publishers globally. Leveraging our unique assets, the Company is well positioned to take advantage of the positive trends in performance-based marketing and commerce.

We are now into the second phase of our corporate growth strategy and remain focused on our long-term view towards growth and profitability. In the near-term, as our guidance implies, we are committed to increasing internal investments so that we continue to deliver quality leads that maximize conversion rates for our advertisers. To that end, we are moving forward, integrating the assets we have accumulated, creating a single transparent platform that combines relevant advertising with the visibility to measure conversions, rather than just clicks alone.

Revenue

FindWhat.com has increased revenue for 21 sequential quarters, with record Q4 2004 revenue of $59 million, an increase of 179% over Q4 2003 revenue of $21 million. For the year ended December 31, 2004, FindWhat.com achieved record revenue of $169 million, a 135% increase over full year 2003 revenue of $72 million.

EBITDA

EBITDA was $11.5 million in the fourth quarter, excluding a non-cash goodwill impairment charge related to the Company's acquired goodwill in Miva Corporation, a wholly owned subsidiary of FindWhat.com. This represents an increase of 94% when compared to EBITDA of $5.9 million in the same period in 2003. Excluding the non-cash goodwill impairment charge for Miva, the Company recorded full year 2004 EBITDA of $37.1 million, which represents an 85% increase over fiscal year 2003 EBITDA of $20.1 million.

Adjusted EPS

FindWhat.com recorded Adjusted EPS for the fourth quarter 2004 of $0.19 per diluted share, which includes a reduction of $0.03 per diluted share relating to the above noted non-cash goodwill impairment charge, and an increase of $0.02 per diluted share related to a non-recurring permanent tax benefit. Excluding these adjustments, FindWhat.com's Adjusted EPS was $0.20 per diluted share, which represents an increase of 33%, compared to Adjusted EPS of $0.15 per diluted share for the same period in 2003. For the year ended December 31, 2004, FindWhat.com reported Adjusted EPS of $0.72 per diluted share. Excluding the two items noted above, the Company realized Adjusted BPS of $0.74 per diluted share which represents a 40% increase when compared to full year 2003 Adjusted EPS of $0.53 per diluted share.

GAAP Net Income

FindWhat.com recorded net income in the fourth quarter of 2004 of $4.7 million, or $0.15 per diluted share, which includes a $570,000, or $0.02 per diluted share, non-recurring permanent tax benefit, and a **$1.1 million, or $0.03 per diluted share, non-cash goodwill impairment charge relating to Miva Corporation.** Excluding the non-recurring permanent tax benefit and the non-cash goodwill impairment charge, which is not tax deductible (therefore impacting pre-tax and after-tax income by the same amount), the Company's net income was $5.3 million, or $0.16 per diluted share, with an effective tax rate of

39%. This compares to $3.5 million or $0.15 per diluted share for the same period in 2003.

For the year ended December 31, 2004, FindWhat.com reported net income of $17.0 million, or $0.60 per diluted share. Excluding the permanent tax benefit and the impairment charge, net income for the year was $17.6 million, or $0.62 per diluted share, compared to net income for the full year ended December 31, 2003 of $11.8 million, or $0.53 per diluted share.

FindWhat.com believes that "EBITDA" and "Adjusted BPS" can provide meaningful comparisons of the Company's current and projected operating performance with its historical results due to the significant increase in non-cash amortization and impairment charges that began in 2004 primarily due to certain intangible assets resulting from mergers and acquisitions. FindWhat.com defines EBITDA as net income before interest, income taxes, depreciation, and amortization, and defines Adjusted EPS as EPS before tax-adjusted amortization expense. FindWhat.com uses EBITDA and Adjusted EPS as internal barometers of its business, and sets goals and awards bonuses in part based on performance relative to these measurements, but does not believe their use lessens the importance of GAAP measures.

Business Review

FindWhat.com acquired or merged with several businesses during 2004, each of which is included in the consolidated financial statements beginning with the respective closing date:

Miva® on January 1st (which subsequently acquired the assets of MvCool in September)

Comet Systems on March 22nd

B&B Enterprises on June 4th

Espotting on July 1st

In Q1 2004, Miva and Comet contributed less than $1 million to the Company's reported consolidated revenue; in Q2 Miva, Comet and B&B contributed less than $4 million; in Q3 2004, Miva, Comet and B&B contributed approximately $5 million; and in Q4, Miva, Comet and B&B contributed approximately $6 million to the reported consolidated revenue. Espotting contributed approximately $28 million and $29 million to the Company's consolidated Q3 2004 and Q4 2004 revenue, respectively.

28

> The Company believes that future revenue recognition by various divisions will not be comparable from period to period given opportunities to direct revenue from one division to another, for example, by targeting paid listings based on the Internet user's location, rather than the home country of the distribution partner.
>
> 2005 Guidance
>
> The Company's preliminary guidance for projected Q1 and full year 2005 revenue, EBITDA, Adjusted EPS and GAAP-basis EPS are listed below. Full year 2005 guidance excludes any effects of any changes in accounting for stock-based compensation, which may be effective for periods reported after July 1, 2005.
>
> 2005 Revenue
> Q1 2005 estimated: $55 - $59 million
> Total 2005 estimated: $250 - $270 million
>
> 2005 EBITDA
> Q1 2005 estimated: $8 - $10 million
> Total 2005 estimated: $45 - $54 million
>
> 2005 Adjusted EPS
> Q1 2005 estimated: $0.12 - $0.15 (assumes 33 million diluted shares outstanding)
> Total 2005 estimated: $0.69 - $0.85 (assumes 34 million average diluted shares outstanding)
>
> 2005 GAAP-basis EPS
> Q1 2005 estimated: $0.08-$0.11 (assumes 33 million diluted shares outstanding)
> Total 2005 estimated: $0.53 - $0.69 (assumes 34 million average diluted shares outstanding)

(Emphasis added.)

45.    The Form 10-K for the period ending December 31, 2004 was filed with the SEC on March 16, 2005. The Form 10-K was signed by the Individual Defendants and certified pursuant to Sections 302 and 906 of Sarbanes-Oxley by Defendants Pisaris-Henderson and Agius.  The Form 10-K contained the following discussion of the Company's impairment policy of its goodwill:

> Impairment of Goodwill - During 2004, operating performance and resulting cash flow from operations did not meet expectations in our

Merchant Services division. Based on these trends, the earnings forecast for the division was revised. We undertook our normal annual assessment of goodwill and indefinite-lived intangible assets under the provisions of FASB Statement No. 142, Goodwill and Other Intangible Assets, during the fourth quarter of 2004, and determined that an impairment existed. Step two analysis was completed as prescribed by FASB Statement No. 142, resulting in our recognition of an impairment loss on goodwill of $1.1 million. This amount has been included in operating expenses in 2004. For additional information on the impairment, please see Footnote G of the consolidated financial statements. We will continue to assess the impairment of goodwill in accordance with FASB Statement No. 142 in future periods.

46.     While Individual Defendants continued to disseminate positive statements about the Company's future during the Relevant Period, thereby artificially inflating its stock price, insiders sold 680,959 shares generating over $11.3 million in proceeds.

**B.     The Truth Begins to Emerge**

47.     On May 2, 2005, the Individual Defendants caused the Company to file a Form 8-K with the SEC announcing that its independent auditor, Ernst and Young LLP (E&Y), had resigned.  The filing stated:

Change in Accountant, Financial Statements and Exhibits

Item 4.01.  Changes In Registrant's Certifying Accountant.

(a) On April 26, 2005, Ernst and Young LLP (E&Y), the independent registered public accounting firm for FindWhat.com, Inc. (the Company), notified the Company and its Audit Committee chairman that, effective with the completion of E&Y's review of the Company's interim financial information for the quarter ended March 31, 2005 and the Company's filing of its related Form 10-Q, E&Y was resigning as the Company's independent registered public accounting firm.

The audit reports of E&Y on the consolidated financial statements of the Company for each of the most recent two fiscal years ended December 31, 2004 and December 31, 2003, respectively, did not contain any adverse opinion or disclaimer of opinion, nor were they qualified or modified as to uncertainty, audit scope, or accounting principles.

From the date of E&Y's engagement on March 18, 2003 through the date of its resignation notification to the Company on April 26, 2005, there were no disagreements as described under Item 304(a)(1)(iv) with E&Y on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure which disagreements, if not resolved to E&Y's satisfaction, would have caused them to make reference to the subject matter in connection with any reports they may have rendered on the Company's consolidated financial statements, within either of the past two fiscal years ended December 31, 2004 and December 31, 2003 and for the subsequent period through the date hereof, except as described below:

On April 26, 2005, E&Y reported to the Company and its Audit Committee chairman that **the Company and E&Y had a disagreement with respect to the need to recognize an impairment of goodwill in connection with the Company's 2004 consolidated financial statements**. The Company recorded an adjustment in its 2004 consolidated financial statements, which resolved the matter to the satisfaction of E&Y. The Company's Audit Committee has discussed this matter with E&Y and has authorized E&Y to respond fully to the inquiries of the successor accountant concerning the subject of the disagreement.

From the date of E&Y's engagement on March 18, 2003 through the date of its resignation notification to the Company on April 26, 2005, there were no reportable events described under Item 304(a)(1)(v) of Regulation S-K, within either of the past two fiscal years ended December 31, 2004 and December 31, 2003 and for the subsequent period through the date hereof, except as described below:

In the Company's Amendment No. 1 to its Annual Report on Form 10-K/A, which the Company filed with the SEC on May 2, 2005, **Managements Annual Report on the Internal Control over Financial Reporting stated, and E&Y's report on internal controls stated, that because of the material weaknesses disclosed in those reports, the Company's internal control over financial reporting was not effective as of December 31, 2004, based on the COSO criteria. E&Y advised the Company of six material weaknesses in the Company's system of internal control over financial reporting, which are disclosed in those reports, and these matters relate to (i) purchase accounting, (ii) goodwill impairment, (iii) revenue recognition for private label agreements and other revenue agreements, excluding those related to FindWhat.com Network revenue, (iv) personnel resources and technical accounting expertise, (v) quarterly and year-end**

**financial statement close and review process, and (vi) segregation of duties.**

The Company has provided E&Y with a copy of this Form 8-K prior to its filing with the SEC and has requested that E&Y furnish it with a letter addressed to the SEC stating whether it agrees with the above statements and, if not, stating the respects in which it does not agree. A copy of E&Y's letter dated May 2, 2005 stating whether or not it agrees with the above statements is attached as Exhibit 16.1 to this Form 8-K and is filed herewith.

The Company will file an amendment to this Form 8-K upon the effective date of E&Y's resignation.

The Audit Committee of the Board of Directors of the Company did not recommend or approve a change in the Company's independent registered public accounting firm. However, the Audit Committee has accepted E&Y's resignation. The Audit Committee began, in January 2005, and has continued through the date of filing of this Form 8-K, the process of interviewing other accounting firms with a view toward replacing E&Y as the Company's independent registered public accounting firm.

(Emphasis added.)

48.     Immediately following the Company's release, FindWhat.com's stock plummeted, on usually high trading volume of 5.8 million shares, from its closing price of $7.75 on May 2, 2005, to a closing price of $5.71 on May 3, 2005. Market analyst Pacific Growth Equities downgraded the Company on May 3, 2005.

49.     The Individual Defendants caused the Company to file an amended Form 10-K/A for the period ending December 31, 2004 on May 2, 2005. It provided the following explanation of the amendments contained within:

This Amendment No. 1 to the Annual Report on Form 10-KIA of FindWhat.com, Inc. for the fiscal year ended December 31, 2004 is filed to amend the Form 10-K as follows:

- On the cover, the number of outstanding shares as of a recent date has been changed to reflect the number of shares of our common stock outstanding as of April 30, 2005;

- We have updated certain sections of the Form 10-K/A, including Item 1. Business – Intellectual Property and Item 3. Legal Proceedings to reflect some or all of the following updates regarding litigation:

   o that the Overture trial commenced on April 19, 2005;

   o that we have settled the Pagniello litigation; and

   o that we have been named as a defendant in the Lane's Gift and Collectibles litigation.

- the risk factor entitled "Click-through fraud, whether we detect it or not, could cause our revenues and our business to suffer" has been updated;

- the risk factor entitled "We have material weaknesses in our internal control over financial reporting that may prevent us from being able to accurately report our financial results or prevent fraud, which could harm our business and operating results" has been updated;

- the risk factor entitled "When we account for employee stock options using the fair value method, it will significantly reduce our net income" has been updated to reflect that the Securities and Exchange Commission has extended until January 1, 2006 the date for compliance with Financial Accounting Standards Board's Statement of Financial Accounting Standards No. 123 (revised 2004), Share-Based Payment (Statement No. 123R), which will require us to recognize as an expense the fair value of stock options and other stock-based compensation to employees;

- we have updated Item 2. Properties to reflect the signing of the Lease for our new London facilities and the fact that we have taken possession of the new London facilities;

- Item 9A is amended to include Management's Annual Report on Internal Control Over Financial Reporting, including management's assessment of the effectiveness of our internal control over financial reporting;

- we have included the information required by Items 10, 11, 12, 13, and 14 which we previously indicated would be incorporated by reference to our Proxy Statement for the 2005 Annual Meeting of Stockholders;

- we have updated Item 15. Exhibits, Financial Statement Schedules, and Reports on Form 8-K to incorporate by reference those exhibits previously filed on our Form 10-K filed on March 16, 2005 with the Securities and Exchange Commission;

- the signature page of the Form 10-K/A has been amended to change the dates and to remove Jerry Della Femina's name to reflect his resignation from the Board of Directors in April 2005, and the signature page has been re-executed by the persons not denoted by an asterisk on the page;

- the Attestation Report on Internal Controls of Ernst & Young LLP, our independent registered public accounting firm has been included at page F-3.

- we have filed updated consents of Grant Thornton LLP and Ernst & Young LLP, as Exhibits 23.1 and 23.2, respectively; and

- we have amended the certifications required by Section 302 of the Sarbanes-Oxley Act of 2002 to include references to our internal control over financial reporting, and have filed the re-executed certifications and the certifications required by Section 906 of the Sarbanes-Oxley Act.

This Amendment No. 1 on Form 10-K/A is filed pursuant to Securities and Exchange Commission Release No. 34-50754, which provides up to 45 additional days beyond the date of the original Form 10-K filing for the filing of Management's Annual Report on Internal Control Over Financial Reporting and the related Attestation Report of our Independent Registered Public Accounting Firm.

50.    On May 5, 2005, before the market opened, the Individual Defendants caused the Company to announce its first quarter 2005 results. The press release issued that day, the relevant parts of which appear below, also announced the resignation of the Defendant Agius as FindWhat.com's CFO.

FINDWHAT.COM, INC. (NASDAQ: FWHT - News), a global leader in developing and providing performance-based marketing and commerce enabling services, today reported financial results for the three months ended March 31, 2005. Highlights include:

- Revenue of $58.2 million, an increase of 136% over Q1 2004;

- GAAP-basis EPS of $0.10 per diluted share;

- EBITDA of $8.4 million, an increase of 23% over the same period in 2004;

- Adjusted EPS of $0.14 per diluted share; and

- Cash, cash equivalents and short-term investments at March 31 of approximately $50 million.

**The Company announced that it has accepted the resignation of Brenda Agius as the Company's chief financial officer, effective as of May 4, 2005.** Ms. Agius will remain with the Company for a transition period. FindWhat.com has initiated a     search for its new chief financial officer.  While conducting the search, Mr. Ken Cragun, FindWhat.com's vice president of finance, will serve as interim chief financial officer.

Craig Pisaris-Henderson, chairman and chief executive officer of FindWhat.com, said, "On behalf of the Company's employees, shareholders, and Board of Directors, we would like to thank Brenda for her contributions to the Company's success. I would also like to thank Ken for his active participation assisting the Company through this process."

The Company also announced that the Audit Committee of its Board of Directors has been interviewing public accounting firms since January, 2005, with a view toward replacing Ernst & Young as the Company's independent registered public accounting firm. The Company disclosed on Monday that Ernst & Young would resign, effective upon the filing of the Company's Form 10-Q for the quarter ended March 31, 2005. The Company will announce the hiring of a new auditor as soon as one is engaged.

With respect to the Company's results, Mr. Pisaris-Henderson said, "We are pleased with our first quarter 2005 results, especially given the steps we took in the fourth quarter of 2004 to remove traffic sources that did not meet our standards in terms of conversions and return on investment for our advertisers. Moving forward, we remain committed to developing a global, full service platform for small and medium-sized businesses that delivers high-quality leads, maximizes monetization opportunities for our partners, and enables advertisers to measure returns through conversion analytics, helping them grow their businesses."

FindWhat.com also said that in recent weeks it has been removing certain distribution partners, representing a meaningful percentage of daily click-through revenue thereby negatively affecting the Company's short-term financial performance. The Company believes these

partners and/or their sub-affiliates had developed methods for obtaining new users that did not follow the Company's distribution guidelines.

Mr. Pisaris-Henderson said, "Undeniably, it is difficult to turn off partners that had produced substantial revenue for our Company. Nevertheless, we remain committed to leading this industry in the implementation of, and adherence to, best practices with respect to delivering high quality prospects from trusted sources to our advertisers. To this end, we will continue to strive to work with our partners to ensure that we foster and maintain high standards in this area. We believe this is absolutely critical for the end users of our services and for our own long-term prospects."

Looking forward, the Company plans to continue to leverage its unique position as the leading independent player within a growing market, and to invest in an expanded portfolio of services for its traffic partners. These investments include Pay Per Call, private-branded toolbars, and the Company's license of FAST's search technology, all of which are designed to help FindWhat.com's traffic partners capitalize on their relationships with their users. The Company also said it plans to increase communication about what it can offer to clients and to enhance its branding strategy, which will be a focus in the second quarter.

First Quarter Results

Revenue was $58.2 million in Q1 2005, an increase of 136% over Q1 2004 revenue of $24.7 million. GAAP net income was $3.2 million, or $0.10 per diluted share, in Q1 2005, compared to $3.8 million, or $0.16 per diluted share, for the same period in 2004. EBITDA was $8.4 million, an increase of 23% over Q1 2004 EBITDA of $6.8 million. Adjusted EPS was $0.14 per diluted share in Q1 2005, compared to $0.16 per diluted share for the same period in 2004. Amortization expense in Q1 2005 was $2.0 million, compared to $189,000 for the same period in 2004. The increase in non-cash amortization expense from Q1 2004 to Q1 2005 reflects amortization of intangible assets resulting from 2004 mergers and acquisitions.

The Company's Q1 2005 revenue and expenses increased substantially versus the same period in 2004, primarily due to the inclusion of operating results from the mergers and acquisitions completed in 2004. Results for the first quarter of 2004 include Miva for the entire period and Comet from its acquisition on March 22, 2004.

FindWhat.com believes that "EBITDA" and "Adjusted EPS" can provide meaningful comparisons of the Company's current and projected

operating performance with its historical results due to the significant increase in non-cash amortization that began in 2004 primarily due to certain intangible assets resulting from mergers and acquisitions. FindWhat.com defines EBITDA as net income before interest, income taxes, depreciation, and amortization, and defines Adjusted EPS as EPS before tax-adjusted amortization expense. FindWhat.com uses EBITDA and Adjusted EPS as internal barometers of its business, and sets goals and awards bonuses in part based on performance relative to these measurements, but believes their use does not lessen the importance of GAAP measures.

2005 Guidance

As previously reported, in the first half of 2005, the Company's EBITDA is being impacted by several factors including new or expanded investments associated with its global marketing and FAST search technology initiatives, rising legal fees resulting from its patent litigation with Overture and significantly higher accounting fees associated with its audit, financial reviews and Sarbanes-Oxley Act compliance. FindWhat.com expects the impact of these factors to decline in the second half of the year.

After taking into consideration the Company's efforts with respect to the sourcing of its traffic, and excluding any potential impact of the outcome of the Overture litigation, FindWhat.com expects Q2 2005 revenue to be between $40 and $50 million, and anticipates full year 2005 revenue to be between $175 and $200 million.

(Emphasis added.)

51.    As discussed above, Individual Defendants deceived the investing public for their personal financial advantage, artificially inflating the price of FindWhat.com stock so that they could engage in the following Relevant Period insider sales transactions:

| SHAREHOLDER | SHARES | PROCEEDS |
| --- | --- | --- |
| Frederick E. Guest | 267,115 | $4,910,492 |
| Craig A. Pisaris-Henderson | 155,000 | $3,166,235 |
| Philip R. Thune | 25,000 | $506,250 |

52.   As highlighted in the chart above, the Insider Trading Defendants sold FindWhat.com stock in unusual amounts and of suspect timing because they knew that the market would respond negatively to FindWhat.com's misleading results.

53.   As alleged herein, Individual Defendants knew that the public documents and statements issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents. As set forth elsewhere herein in detail, Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding FindWhat.com and its business practices, their control over and/or receipt of FindWhat.com's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning FindWhat.com, were active and culpable participants in the fraudulent scheme alleged herein. Individual Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

54.   Plaintiff brings this action derivatively in the right and for the benefit of FindWhat.com to redress injuries suffered and to be suffered by FindWhat.com as a result of the breaches of fiduciary duty by the Individual Defendants. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have.

55.     Plaintiff will adequately and fairly represent the interests of FindWhat.com and its shareholders in enforcing and prosecuting its rights.

56.     Plaintiff is an owner of FindWhat.com common stock and was an owner of FindWhat.com common stock at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

57.     FindWhat.com's Board of Directors is currently composed of eight (8) directors – Defendants Pisaris-Henderson, Thune, Bishop, Brewster, Guest, Hepp, Rothstein and Simonson.

58.     Defendant Pisaris-Henderson has served on the Board of Directors since June 2002.   He is currently the Chairman of the Board of Directors and the Company's Chief Executive Officer.  He served as the Company's President from 1999 to 2004, and as the Chief Technology Officer from 1999 until 2001.

59.     Defendant Thune has served on the Board of Directors since January 2002.  He is the Company's President and Chief Operating Officer.  He served as the Chief Financial Officer from 2000 to 2004.

60.     Defendant Bishop has served on the Board of the Company since September 2004.  He is the Company's Chief Marketing Officer.

61.     Defendant Brewster has served on the Board of the Company since December 2003.

62.     Defendant Guest has served on the Board of the Company since April 2001 and serves on the Board's Audit Committee.

63.     Defendant Hepp has served on the Board of the Company since December 2004 and serves on the Board's Audit Committee.

64.    Defendant Rothstein has served on the Board of the Company since July 2004 and serves on the Board's Audit Committee.

65.    Defendant Simonson has served on the Board of the Company since December 2003.

66.    As a result of the facts set forth herein, Plaintiff has not made any demand on FindWhat.com's Board of Directors to institute this action against the Individual and Director Defendants.   Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action for the additional following reasons:

   a.    Director Defendants Pisaris-Henderson, Thune and Bishop are considered insiders because of their current and past positions with the Company.   Further, the Company considers them to be insiders in relation to the NASDQ rule as set forth in the Company's Definitive Proxy Statement filed on May 2, 2005.  As such, demand on Director Defendants Pisaris-Henderson, Thune and Bishop is futile;

   b.    Defendant Director Bishop is a co-founder of Espotting Media, which was acquired by FindWhat.com in July 2004.   Because of this acquisition, Bishop obtained his position as an officer and director of FindWhat.com as well as a significant amount of stock.   Because Mr. Bishop owes his current position to Pisaris-Henderson who helped oversee the acquisition of Espotting, it is reasonable to conclude that Bishop would not authorize suit against him or any other Board member that supported the acquisition.  Therefore, demand on Bishop is futile;

   c.    Further, Director Defendants Thune and Simonson are former officers of Broadcasting Partners Holdings, LP and Broadcasting Partners, Inc. two related companies.   Over the years that Thune and Simonson spent on these boards, they devolved and close personal and professional relationships.   Therefore, it is reasonable to conclude that Thune and Simonson would not sue each other.  As such, demand on them is futile;

   d.    Director Defendant Pisaris-Henderson is the beneficial owner of 5.4% of FindWhat.com's common stock.   Director Defendant Thune is the beneficial owner of 2.1% of FindWhat.com's common stock.   Director Defendant Guest is the president and owner of Guest Capital, LLC. A private fund investing in high-technology companies.   As such, Defendant Guest is the beneficial owner of 1.4% of FindWhat.com's

common stock.  Director Defendant Rothstein is an affiliate of Global Rights Fund II LP, which owns 4.3% of FindWhat.com's common stock.

e.     Director Defendants Guest, Hepp and Rothstein are members of the Audit Committee of the Board of Directors.  According to the Definitive Proxy Statement filed with the Securities and Exchange Commission on May 5, 2005, the Audit Committee focuses on six (6) areas, one of which is "the adequacy, scope and results of the internal accounting controls and procedures."  Further, the Audit Committee charter requires that the Audit Committee dismiss with the independent and/or anticipated attestation related to internal controls.  Additionally, the charter requires the Audit Committee to "...periodically review and discuss, as appropriate, with management and the independent auditors:  (1) the design and effectiveness of the Company's internal control over financial reporting and its disclosures controls and procedures as defined in the SEC rules; (2) any significant deficiencies or material weaknesses  in that internal control, any change that has materially affected or is reasonably likely to materially affect that internal control, and (3) any material fraud and any fraud, whether material or not material, that involves management or other employees who have a significant role in that internal control."  As such, they were charged with ensuring the adequacy, scope and results of the Company's internal accounting controls and procedures.  Because of the material weakness found in the internal controls of the Company's accounting system, Defendants Guest, Hepp and Rothstein face personal liability for their failures to properly fulfill their obligations.   Thus, a reasonable person would conclude that Guest, Hepp and Rothstein will not authorize suit against themselves because of the personal liability that they face.  Therefore, demand on Defendants Guest, Hepp and Rothstein is futile.

f.     A majority of FindWhat.com's Board of Directors and senior management participated in the wrongs complained of herein.  FindWhat.com's directors are not disinterested or independent due to the following:  Director Defendants served on the Board during the Relevant Period.  Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs.   Each of the Director Defendants breached the fiduciary duties that they owed to FindWhat.com and its shareholders in that they failed to prevent and correct material misrepresentations made by the Company.  Further, the Director Defendants are not independent because of their stake in the financial performance of the Company;

g.     Director Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein;

h.   The Director Defendants of FindWhat.com, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from FindWhat.com's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. Each of the Director Defendants exhibited a sustained and systemic failure to fulfill their fiduciary duties, which could not have been an exercise of good faith business judgment and amounted to gross negligence and extreme recklessness;

i.   In order to bring this suit, a majority of the Directors of FindWhat.com would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

j.   The acts complained of constitute violations of the fiduciary duties owed by FindWhat.com's officers and directors and these acts are incapable of ratification;

k.   Any suit by the current directors of FindWhat.com to remedy these wrongs would likely expose the Individual and Director Defendants, and FindWhat.com, to additional liability for violations of the securities laws that would result in civil actions being filed against the Individual and Director Defendants.   Pisaris-Henderson, Thune and Guest are presently Defendants in securities class action lawsuits; thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

l.   FindWhat.com has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual and Director Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for FindWhat.com any part of the damages FindWhat.com suffered and will suffer thereby;

m.   If the current Directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual and Director Defendants.   In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

n.   If FindWhat.com's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of FindWhat.com. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, it is believed that the directors' and officers' liability insurance policies covering the Individual and Director Defendants in this case contain provisions that eliminate coverage for any action brought directly by FindWhat.com against these Director Defendants, known as, *inter alia*, the "insured versus insured exclusion."  As a result, if these directors were to sue themselves or certain of the officers of FindWhat.com, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  If there is no directors' and officers' liability insurance at all then the current directors will not cause FindWhat.com to sue them, since they will face a large uninsured liability.

67.   Plaintiff has not made any demand on the shareholders of FindWhat.com

to institute this action since demand would be a futile and useless act for the following

reasons:

a.   FindWhat.com is a publicly held company with approximately 30.7 million shares outstanding, and thousands of shareholders;

b.   Making demand on such a number of shareholders would be impossible for Plaintiff, who has no way of finding out the names, addresses or phone numbers of all the shareholders; and

c.   Making demand on all shareholders would force Plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

68.   FindWhat.com has expended and will continue to expend significant sums

of money as a result of the illegal and improper actions described above.  Such

expenditures will include, but are not limited to:

a.   Costs incurred to carry out internal investigations, including legal fees paid to outside counsel and experts; and

b.   Costs and legal fees for defending FindWhat.com and the Individual Director Defendants against private class action litigation arising from illegal and improper conduct alleged herein.

## FIRST CAUSE OF ACTION

### Against Individual Defendants
### for Breach of Fiduciary Duty

69.   Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs one (1) through sixty-eight (68) above as if set forth fully herein.

70.   The Individual Defendants owed and owe FindWhat.com fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe FindWhat.com the highest obligation of good faith, fair dealing, loyalty and due care.

71.   The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

72.   The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial condition and business prospects of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

73.   As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, FindWhat.com has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

74.     Plaintiff, on behalf of FindWhat.com, has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### Against The Individual Defendants
### for Abuse of Control

75.     Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs one (1) through seventy-four (74) above as if set forth fully herein.

76.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence FindWhat.com, for which they are legally responsible.

77.     As a direct and proximate result of the Individual Defendants' abuse of control, FindWhat.com has sustained significant damages.

78.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

79.     Plaintiff, on behalf of FindWhat.com, has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Against The Individual Defendants
### for Gross Mismanagement

80.     Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs one (1) through seventy-nine (79) above as if set forth fully herein.

81.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of FindWhat.com in a manner consistent with the operations of a publicly held corporation.

82. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, FindWhat.com has sustained significant damages in excess of millions of dollars.

83. As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

84. Plaintiff, on behalf of FindWhat.com, has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### Against The Individual Defendants
### for Waste of Corporate Assets

85. Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs one (1) through eighty-four (84) above as if set forth fully herein.

86. As a result of the Individual Defendants' improper conduct and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Individual Defendants have caused FindWhat.com to waste valuable corporate assets by paying bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend the Individual Defendants' unlawful actions.

87. As a result of the waste of corporate assets, Individual Defendants are liable to the Company.

88. Plaintiff, on behalf of FindWhat.com, has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### Against The Individual Defendants
### for Unjust Enrichment

89.     Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs one (1) through one hundred thirty-three (133) above as if set forth fully herein.

90.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of FindWhat.com.

91.     Plaintiff, as shareholder and representative of FindWhat.com, seeks restitution from the Individual Defendants, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by the Individual Defendants, from their wrongful conduct and fiduciary breaches.

## SIXTH CAUSE OF ACTION

### Against The Insider Selling Defendants for
### Breach of Fiduciary Duties, for Insider Selling
### and for Misappropriation of Information

92.     Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs one (1) through ninety-one (91) above, the same as set forth fully herein.

93.     At the time of the stock sales set forth herein by the Insider Selling Defendants, they knew the information described above and sold FindWhat.com common stock on the basis of such information.

94.     The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a

proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold FindWhat.com common stock.

95.   The Insider Selling Defendants' sale of FindWhat.com common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

96.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## SEVENTH CAUSE OF ACTION

### Against Defendants Pisaris-Henderson, Thune and Agius, Pursuant to 15 U.S.C. §7243 (SARBANES-OXLEY ACT)

97.   Plaintiff incorporates by reference and realleges each and every allegation set forth in paragraphs one (1) through ninety-six (96) above as if set forth fully herein.

98.   Based upon the allegations made above and pursuant to 15 U.S.C. §7243, FindWhat.com is entitled to reimbursement of all bonuses and other incentive-based or equity-based compensation paid to Defendants Pisaris-Henderson and Thune, as well as any profits realized from the sale of FindWhat.com securities by them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.   Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to ensure that Plaintiff has an effective remedy;

C.     Awarding to FindWhat.com restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by these Individual Defendants;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 21, 2005                    Respectfully Submitted,

                    s/David B. Ferebee
                    David B. Ferebee (FB #347620)
                    DAVID B. FEREBEE, P.A.
                    503 East Monroe Street
                    Jacksonville, FL  32202
                    (904) 358-7001/Fax: (904) 353-2756
                    *Ferebeeatlaw@BellSouth.net*


                    William B. Federman
                    FEDERMAN & SHERWOOD
                    120 N. Robinson, Suite 2720
                    Oklahoma City, OK  73102
                    Phone:  (405) 235-1560
                    Fax:  (405) 239-2112
                    *wfederman@aol.com*

- and –
2926 Maple Avenue, Suite 200
Dallas, TX  75201

Attorneys for Plaintiff

## VERIFICATION

I, ___BRUCE VERDUYN___ declare that I have reviewed the Shareholder Derivative Complaint ("Complaint") prepared on behalf of FindWhat.com, Inc., and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of FindWhat.com, Inc.. common stock during the time period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

___7/15/05___
**Date**

_Bruce Verduyn_